```
----------------------------------X----------------------------
WELLINGTON CLASE,                  :UNITED STATES DISTRICT COURT
                                   :EASTERN DISTRICT OF NEW YORK
             Plaintiff(s),         :
                                   :CASE No.:17-CV-2247 (MKB)(ST)
       against                     :
                                   :CIVIL ACTION
                                   :
THE UNITED STATES, THE CITY OF     : FIRST AMENDED COMPLAINT
NEW YORK, SPECIAL AGENT THOMAS     :
KALOGIROS, DETECTIVE JOHN BARRATT,.:
DETECTIVE MICHAEL O'BRIEN,         : PLAINTIFF DEMANDS
UNDERCOVER CO177, ANDREW THORNE,   : TRIAL BY JURY
DETECTIVE STEPHEN MILLWATER, and   :
JOHN DOES 1-15,                    :
                                   :
                                   :
             Defendant(s).         :
----------------------------------X----------------------------
```

TAKE NOTICE, the Plaintiff, Wellington Clase, hereby appears in this action by his attorneys, Nwokoro & Scola, Esquires, and demands that all papers be served upon them, at the address below, in this matter.

Plaintiff, Wellington Clase, by his attorneys, Nwokoro & Scola, Esquires, complaining of the defendants, The United States, The City of New York, Special Agent Thomas Kalogiros, Detective John Barratt, Detective Michael O'Brien, Undercover CO177, Andrew Thorne, Detective Stephen Millwater, and John Does 1 to 15, collectively referred to as the Defendants, upon information and belief alleges as follows:

## NATURE OF THE ACTION

1. This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by

1

the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], and further arising under the law and statutes of the State of New York].

2. The action against the United States is brought under the Federal Tort Claims Act, 28 U.S.C. §2671, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, 28 U.S.C. §§1331 and 1346(b). The action against the individual federal defendants are brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct.1999, 29 L.Ed. 2d 619 (1971).

## JURISDICTION

3. The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

4. All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiff's claims under applicable State and City laws.

5. As the deprivation of rights complained of herein occurred

within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

## SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT

6.   All conditions precedent to the filing of this action have been complied with. On June 13, 2016, within ninety days after the false Arrest and other claims alleged in this complaint arose, a sworn written notice of claim, was served upon the defendant City of New York. The plaintiff's claim was assigned the number 2016P16PI018374 by the City of New York's Comptroller's office.

7.   At least thirty days have elapsed since the service of the abovementioned notice of claim, and adjustment or payment of the claim has been neglected and/or refused.

8.   This action, pursuant to New York State and City Law, has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

9.   On September 1, 2016, Plaintiff's submitted an Administrative Claim for the claim set forth below, to the Bureau of Alchohol, Tobacco, Firearms and Explosives (ATF). Six months having elapsed, all conditions precedent to a Federal Tort Claims Act have been met.

## PARTIES

10.  Plaintiff resides in Queens, New York and is a resident of the State of New York.

11.  The actions which form the underlying basis for this case all took place in the County of Queens, within the jurisdiction of the Eastern District of New York.

12.  Defendants John Barratt and Michael O'Brien, Detetective Stephen Millwater and Andrew Thorne are detectives and a Sergeant employed by the New York City Police Department

(NYPD) acting under color of state law. They are being sued in both their individual and official capacities. Undercover CO177 is an un-named Officer of the NYPD whose identity or rank has not been revealed and is unknown to the plaintiff.

13. The Defendant, City of New York is a municipality in the State of New York and employs the Defendants Police Officers.

14. Defendants Thomas Kalogiros, Andrew Thorne, and Undercover CO177 are Special Agents of the ATF, stationed in the City and State of New York, and as ATF agents, are employees of the United States for whose negligence, actions or omissions, the United States may be liable under the Federal Tort Claims Act. Defendants Kalogiros and Andrew Thorne are both being sued in their individual and official capacities and are liable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

15. Defendants John Does 1 to 15, are various uniformed and plain clothed members of the ATF and the NYPD, whose names are currently unknown to the plaintiff who unlawfully broke into plaintiff's house, unnecessarily brutalized the plaintiff, unlawfully seized and searched the plaintiff, and unlawfully arrested the plaintiff.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

16. On May 10, 2013, at approximately 3:30 p.m., in the vicinity of 124th Street on Jamaica Avenue, Queens, New York, defendant Undercover CO177 covertly purchased a firearm from an un-named individual. Undercover CO177 video recorded this transaction and in addition, there is also an audio recording of the phone call between Undercover CO177 and the unnamed person that immediately preceded the

firearm sale transaction.

17.  At the time of the sale, the un-named individual was not wearing gloves when he handed the firearm to Undercover CO177 on camera, therefore, the finger prints of the unnamed person were on the firearm in the possession of Undercover 177 as of May 10, 2013.

18.  On May 10, 2013, at approximately 4:00 p.m., at the 114th Precinct of the NYPD located at 34-16 Astoria Boulevard South, Astoria, New York 11103, Undercover CO177 viewed a photo array consisting of head shot style photographs of six young Hispanic males which included a photographs of the plaintiff. Undercover CO177 identified the plaintiff as the unnamed person who had sold a firearm to Undercover CO177 approximately 30 minutes earlier, on the same day.

19.  At the time that he identified the plaintiff as the unnamed gun seller, Undercover CO177 was aware that the plaintiff was not in fact, the un-named gun seller.

20.  At the time that he identified the plaintiff as the gun seller, Undercover CO177 had no reasonable basis to believe that plaintiff was the gun seller.

21.  At the time that he identified the plaintiff as the gun seller, Undercover CO177 had in his possession, a video recording and photographs of the gun seller which when compared to the photograph of the plaintiff revealed that plaintiff was not in fact the gun seller.

22.  A comparison of the photograph and video of the gun seller with the photo array picture of the plaintiff reveals that plaintiff can be easily distinguished from the gun seller by his facial appearance. The gun seller in the video has model like features, angled eyebrows, a naturally pointed hairline, and a cleft chin, while plaintiff has a rounded chin and none of those features.

23. Plaintiff is also easily distinguished from the gun seller because plaintiff suffers from a congenital condition in his left eye known as Congenital Ptosis (or a lazy eye) which gives his left eye a distinctive droppy appearance whereas the unnamed gun seller did not have this condition.

24. Undercover CO177 with malice aforethought knowingly mis-identified the plaintiff as the gun seller although he knew or had reason to know that plaintiff was not the gun seller.

25. On August 4, 2015, twenty-seven months after the gun sale, at 5:45 a.m. in the morning, while at his home located at 7407 64th Lane, Ridgewood, New York 11385, plaintiff was accosted by 15 uniformed and plain clothed members of the ATF and the NYPD including, defendants Thomas Kalogiros, John Barratt, Michael O'Brien, Andrew Thorne, and Stephen Millwater, who unlawfully invaded his home and arrested him.

26. As of August 4, 2015, plaintiff resided in his home in Ridgewood, New York, with his father, his mother, his young son, and his wife who is also the mother of his son.

27. On the morning of the arrest, the defendants banged on the door to the house, plaintiff's father opened the door while plaintiff stood behind him in the living area. The defendants entered the house en masse with guns drawn and in riot gear and as soon as they sighted the plaintiff, two or three of the defendants rushed at the plaintiff and without giving him a chance to go quietly, knocked him to the ground, twisted his arms behind his back, placed their weights on his back, slammed him face down to the floor, and held him there while they put handcuffs on him as his father, mother, wife and child, watched in horror.

28. The excessive force used to arrest the plaintiff was

completely unnecessary because the plaintiff had shown no sign that he wanted to resist arrest or present any kind of physical threat to the defendants.

29. The excessive force used to arrest the plaintiff caused the plaintiff severe pain and stress because immediately prior to the arrest, the plaintiff had sustained injuries to his back and shoulder in a motor vehicle accident and was receiving treatment to his back and left shoulder. In fact, plaintiff had left shoulder surgery scheduled for August 7, 2013, that was not performed as a result of the arrest.

30. Plaintiff was then brought out of the house, while in handcuffs and placed in a police vehicle.

31. That thereafter plaintiff was transported in the defendants' vehicle to the NYPD 113th Precinct, where he was further detained.

32. At no time during this process did the police officers tell the plaintiff why he was being arrested.

33. In the twenty seven months between the tainted photo array identification of May 10, 2013, and the arrest of the plaintiff on August 4, 2015, there were no further identifications or other detective procedures performed in other to properly and accurately identify the unnamed gun seller.

34. On August 4, 2015 at approximately 6:10 a.m., immediately following plaintiff's arrest, in a Confirmatory Identification Procedure conducted by Detective Michael O'Brien at the 113th Precinct, Detective John Barratt falsely identified the plaintiff as the person who had purchased a gun from Undercover CO177, twenty seven months before.

35. At the time that he identified the plaintiff as the unnamed gun seller, Defendant Barratt was aware that the plaintiff

was not in fact, the gun seller.

36. At the time that he identified the plaintiff as the gun seller, Barratt had no reasonable basis to believe that plaintiff was the gun seller.

37. At the time that he identified the plaintiff as the gun seller, Barratt had in his possession, a video recording and photographs of the gun seller which when compared to the plaintiff revealed that plaintiff was not in fact the gun seller.

38. At the premises of the 113th Precinct, the plaintiff was pedigreed, booked and further detained without any food, drink or access to a functional restroom facility for a period of approximately eight hours.

39. During this period, plaintiff requested, food, water, and to be allowed to use the facilities. Each time, the defendants laughed at him and ignored him.

40. Upon information and belief, at some point after his arrest the details of which have never been disclosed to the plaintiff, plaintiff was indicted by a grand jury in Queens County under Indictment #1477/2015.

41. Upon information and belief, the grand jury indictment of the plaintiff was obtained by fraud and falsehoods.

42. Upon information and belief, defendants Undercover CO177, Thomas Kalogiros, Andrew Thorne, John Barratt, Michael O'Brien, Sergeant Mezzatesta and Detective Millwater, falsely testified to the grand jury that the plaintiff had been caught on video selling a firearm to Undercover CO177, when in fact, this was not the case.

43. The decision to arrest the plaintiff was objectively unreasonable under the circumstances.

44. That immediately after plaintiff's arrest, defendants could have compared plaintiff's fingerprints to the fingerprints

found on the gun that was sold to Undercover CO177 and conclusively established plaintiff's innocence, but defendants maliciously or negligently failed to do so, or did so, but maliciously or negligently withheld the results.

45. That immediately after plaintiff's arrest, the defendants could have compared the plaintiff's physical appearance with the video of the gun seller and conclusively established plaintiff's innocence, but defendants maliciously or negligently failed to do so, or did so, but failed to act on the results.

46. That while plaintiff was being detained, defendants, Thomas Kalogiros, Andrew Thorne, John Barratt, Michael O'Brien, and Stephen Millwater, individually and/or collectively completed arrest paperwork, in which they swore in part, that the plaintiff had committed a crime and/or offense.

47. The factual claim by the defendant officers were materially false and the defendant officers knew it to be materially false at the time they first made it, and every time thereafter when they repeated it.

48. That the defendant officers forwarded these false allegations to the Queens County District Attorney ("QCDA") in order to justify the arrests and to persuade the QCDA to commence the plaintiff's criminal prosecution.

49. Upon information and belief, on or about September 15, 2015, in aid of plaintiff's prosecution, Special Agent Thomas Kalogiros falsely told the prosecuting Assistant District Attorney, Catherine Jahn, that Undercover CO177 identified plaintiff as the person who sold a firearm to Undercover CO177 on May 10, 2013.

50. Upon information and belief, on or about September 16,

2015, in aid of plaintiff's continued prosecution, Special Agent Thomas Kalogiros filed a false and mis-leading affidavit where he stated that plaintiff was identified to him by Undercover CO177 as the person who sold the Undercover a firearm on May 10, 2013.

51. That as a direct result of these false allegations by the defendant Officers and Special Agents, the plaintiff was criminally charged.

52. That after being detained for about eight hours, plaintiff Wellington Clase was transported to the Supreme Court, Queens County, where he was arraigned and charged with seven counts of felony offenses the substance of which was criminal sale of a firearm and criminal possession of a firearm on May 10, 2013.

53. At the arraignment, bail was set at $150,000 (one hundred and fifty thousand dollars) which plaintiff could not afford, and plaintiff was remanded into custody.

54. Plaintiff was then taken to Rikers Island Correctional Facility, where he was incarcerated for the next seven months.

55. During his incarceration, plaintiff was verbally and racially abused by Correction Officers multiple times. The Correction Officers called plaintiff a "fucking Dominican" who was selling guns, and expressed relief that he was "off" the streets.

56. While he was incarcerated at Riker's Island for six months, plaintiff was beaten and harassed on multiple occasions by other inmates while Correction Officers stood by and failed to stop or prevent the beatings.

57. As a result of these beatings, plaintiff sustained physical injuries and requested medical treatment from the Correction Officers, but never received any medical

attention.

58. While he was incarcerated, plaintiff was denied his regular asthma medication, Albuterol, although he requested it, and the Correction Officers knew about his asthmatic condition.

59. In the month of December 2015, plaintiff was punished by Correction Officers by being placed in solitary confinement for 30 days in a tiny cell with a broken window, known as "the Box" which was freezing at the time, for 30 days, although Correction Officers were aware that plaintiff had a pre-existing asthma condition.

60. Although his time in the Box exacerbated plaintiff's pre-existing asthmatic condition, Correction Officers denied plaintiff his asthma medication although he requested it.

61. Plaintiff was taken to court in handcuffs and sometimes in leg cuffs, six times over a period of seven months in order to defend himself from the criminal charges against him.

62. On January 29, 2016, plaintiff's family finally was able to post bail and plaintiff was released on bail.

63. After plaintiff was released on bail, the defendants continued to prosecute him for another six months and insist that plaintiff was the un-named gun seller, although it was apparent to the defendants that plaintiff was not the gun seller.

64. In May 2016, after plaintiff had been prosecuted for approximately nine months, the defendants held a belated Line Up identification procedure where an un-identified witness failed to identify the plaintiff.

65. On June 9, 2016, the Prosecution withdrew all criminal charges against the plaintiff stemming from the arrest of August 4, 2015, and all charges against the plaintiff were dismissed.

66. At no time prior to or during the above events was there

probable cause to arrest the plaintiffs, nor was it reasonable for the defendants to believe that probable cause existed.

67. At no time did any defendant take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by the defendants against the plaintiffs.

68. The defendant officers intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

69. As a direct and proximate result of defendants' actions, plaintiffs suffered and continues to suffer injuries, including but not limited to physical trauma to his face, ear, and knees, chest, left shoulder, back, bruises emotional distress, humiliation, nightmares, and unwarranted severe anger bouts some or all of which may be permanent.

70. The false arrest of plaintiffs, and plaintiffs wrongful imprisonment, because of defendants' knowledge of a lack of any legitimate cause or justification, were intentional, malicious, reckless and in bad faith.

71. As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

72. Defendants Kalogiros and Andrew Thorne, and other un-identified ATF agents named here as John Does, who participated in the unlawful invasion of plaintiff's residence, were negligent and deliberately indifferent in the performance of their duties as ATF officers for which

12

negligence the United States may be held liable under the Federal Tort Claims Act.

73. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

74. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers including the defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers thereby causing and encouraging police officers including defendants in this case, to engage in unlawful conduct.

75. That the defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the New York City Police Department (NYPD).

76. Defendant New York City had actual or constructive knowledge that there was inadequate supervision over and /or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers and other blatant violations of the United States Constitution and rules and regulations of the NYPD. Despite ample notice and/or knowledge of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to ensure that NYPD members engaged in law enforcement conduct themselves in a lawful and proper manner, inclusive of use of their authority as

law enforcement officers with respect to the general public
and specifically the plaintiff herein.

77. The defendant City of New York deliberately and
intentionally chose not to take action to correct the
chronic, systemic and institutional misuse and abuse of
police authority by its NYPD employees and thereby
deliberately and intentionally adopted, condoned and
otherwise created through deliberate inaction and negligent
supervision and NYPD policy, practice and custom of
utilizing illegal and impermissible searches, arrests and
detentions, and the manufacturing of evidence, in the
ordinary course of NYPD business in flagrant disregard of
the state and federal constitutions, as well as the Patrol
Guide, up to and beyond plaintiff's arrest.

78. That all of the acts and omissions by the defendant
officers described above were carried out pursuant to
overlapping policies and practices of the municipal
defendant in their capacities as police officers and
officials pursuant to customs, policies, usages, practices,
procedures and rules of the City and the NYPD, all under
the supervision of ranking officers of the NYPD.

79. The existence of the unconstitutional customs and policies
may be inferred from repeated occurrences of similar
wrongful conduct, as documented in a long history of civil
actions in state and federal courts.

80. In an Order dated November 25, 2009, in <u>Colon v. City of
New York, 09 CV 0008 (EDNY)</u>, the court held that:

> *Informal inquiry by the court and among the judges of
> this court, as well as knowledge of cases in other
> federal and state courts, has revealed anecdotal
> evidence of repeated, widespread falsification by
> arresting police officers of the New York City Police*

*Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.*

81. That on more than half of the occasions where the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

82. That the defendant New York City has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk and the inadequate level of supervision would lead to violation of individuals constitutional rights in general, and caused the violation of plaintiff's rights in particular.

83. The actions of all defendants, acting under color of State law, deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular, the rights to be secure in his person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

84. By these actions, defendants have deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth

Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

85. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

## AS A FIRST CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983/NEW YORK STATE LAW/BIVENS

86. By this reference, plaintiff incorporates each and every allegation and averment previously alleged in this complaint as though fully set forth herein.

87. The arrest, detention and imprisonment of plaintiff was without just or probable cause and without any rightfully obtained warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

88. As a result of plaintiffs' false arrest and imprisonment, he has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know them, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and have been otherwise damaged in his character and reputation.

89. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

90. The defendant NYPD officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

91. The defendant ATF Officers were at all material times

acting within the scope of their employment and as such, the United States is liable for the defendant's negligent acts and omissions as described above pursuant to the Federal Tort Claims Act. The ATF Officers are liable for their violation of plaintiff's 4th Amendment right to be free from unreasonable search and seizure, under Bivens(supra).

92. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

## AS A SECOND CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER MALICIOUS PROSECUTION UNDER 42 U.S.C§ 1983/NEW YORK STATE LAW/BIVENS

93. By this reference, plaintiff incorporates each and every preceding allegation of this complaint as though fully set forth herein.

94. The commencement and continued prosecution of the criminal judicial proceeding against plaintiffs, including the arrest, the imprisonment, and the charges against plaintiffs were committed by or at the insistence of the defendant Police Detectives and ATF Special Agents without probable cause or legal justification, and with malice.

95. That the Police Detectives and ATF agents were directly involved in the initiation of criminal proceedings against the plaintiff.

96. That the defendant officers lacked probable cause to initiate criminal proceedings against the plaintiff.

97. That the defendant officers acted with malice in initiating criminal proceedings against the plaintiff.

98. That the defendant officers were directly involved in the continuation of criminal proceedings against the plaintiff.

99. That the defendant officers lacked probable cause in

continuing criminal proceedings against the plaintiff.

100. That the defendant officers acted with malice in continuing criminal proceedings against the plaintiff.

101. That the defendant officers misrepresented and falsified evidence throughout all phases of the criminal proceeding.

102. That the defendant officers mis-represented and falsified evidence to the prosecutors in the Queeens County District Attorney's office.

103. That the defendant officers withheld exculpatory evidence from the prosecutors in the Queens County District Attorney's office.

104. That the defendant officers did not make a complete statement of facts to the prosecutors in the Queens County District Attorney's office.

105. The criminal judicial proceeding initiated against plaintiffs was dismissed on June 9, 2016, and terminated in the plaintiff's favor.

106. The arrest, imprisonment and prosecution of the plaintiff was malicious and unlawful, because plaintiff had committed no crime and there was no probable cause to believe that plaintiffs had committed any crimes.

107. The defendant officers actions were intentional, unwarranted and in violation of the law. The defendant officers had full knowledge that the charges made before the Court against the plaintiffs were false and untrue.

108. As a consequence of the malicious prosecution by the defendant officers, plaintiffs suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in an amount to be determined at trial, against defendant officers, individually and severally.

109. In addition, the defendant officers conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

110. The defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers and ATF Special Agents. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution and by <u>Biven (supra)</u>.

111. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages herein before stated.

## AS A THIRD CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER:
## EXCESSIVE FORCE UNDER 42 U.S.C § 1983/BIVENS

112. By this reference, the plaintiff incorporates each and every preceding allegation of this complaint as though fully set forth herein.

113. The level of force employed by the defendant officers who tackled the plaintiff and knocked him to the ground, was objectively unreasonable and in violation of the plaintiff's constitutional rights.

114. As a result of the aforementioned conduct of the defendant officers, the plaintiff was subjected to excessive force,

resulting in serious and severe physical injuries.

115. As a consequence of the defendant officers' individual and/or collective actions as set forth above, the plaintiff suffered serious personal injuries, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against the defendant officers, individually and severally.

## AS A FOURTH CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: UNLAWFUL SEARCH UNDER 42 U.S.C § 1983/BIVENS

116. By this reference, the plaintiff incorporates each and every preceding allegation of this complaint as though fully set forth herein.

117. Following the plaintiff's arrest, the defendant officers searched and/or strip-searched and/or caused the plaintiff and/or his property to be searched and/or strip-searched, without any individualized reasonable suspicion that he was concealing weapons or contraband.

118. As a result of the foregoing, the plaintiff was subjected to an illegal and improper search and/or strip-search.

119. The foregoing unlawful search violated the plaintiffs' constitutional right to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

120. As a consequence of the defendant officers' individual and/or collective actions as set forth above, the plaintiff suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against the defendant officers, individually and severally.

## AS A FIFTH CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: FAILURE TO INTERVENE UNDER 42 U.S.C § 1983/BIVENS

121. By this reference, the plaintiff incorporates each and every preceding allegation of this complaint as though fully set forth herein.

122. Each defendant officer had an affirmative duty to intervene on the plaintiff's behalf to prevent the violation to his constitutional rights, as more fully set forth above.

123. Each defendant officer failed to intervene on the plaintiff's behalf to prevent the violation of his constitutional rights, despite having had a realistic and reasonable opportunity to do so. As a consequence of the defendant officer's individual and/or collective actions, the plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, serious personal injuries, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in an amount to be determined at trial, against the defendant officers, individually and severally.

## AS A SIXTH CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: DENIAL OF A CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER 42 U.S.C § 1983/BIVENS, DUE TO THE FABRICATION/FALSIFICATION OF EVIDENCE

124. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

125. Each defendant officer created false evidence against the plaintiff.

126. Each defendant officer forwarded false evidence and false information to the prosecutors in the Queens County District Attorney's office.

127. Each defendant officer was directly involved in the

initiation of criminal proceedings against the plaintiffs.

128. Each defendant officer lacked probable cause to initiate criminal proceedings against the plaintiff.

129. Each defendant officer acted with malice in initiating criminal proceedings against the plaintiff.

130. Each defendant officer was directly involved in the continuation of criminal proceedings against the plaintiffs.

131. Each defendant officer lacked probable cause in continuing criminal proceedings against the plaintiffs.

132. Each defendant officer acted with malice in continuing criminal proceedings against the plaintiff.

133. Each defendant officer misrepresented and falsified evidence throughout all phases of the criminal proceeding.

134. Each defendant officer misrepresented and falsified evidence to the prosecutors in the Queens County District Attorney's office.

135. Each defendant officer withheld exculpatory evidence from the prosecutors in the Queens County District Attorney's office.

136. Each defendant officer did not make a complete statement of facts to the prosecutors in the Queens County District Attorney's office.

137. By creating false evidence against the plaintiffs; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, each defendant officer violated the plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

138. As a consequence of the defendant officers' actions, the

plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against each defendant officer, individually and severally.

## AS A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS THE CITY OF NEW YORK, BARRATT, O'BRIEN AND JOHN DOES: FALSE ARREST, FALSE IMPRISONMENT, MALICIOUS PROSECUTION, EXCESSIVE FORCE AND UNLAWFUL SEARCH PURSUANT TO ARTICLE 1, SECTION 12, OF THE NEWYORK STATE CONSTITUTION

139. By this reference, the plaintiff incorporates each and every preceding allegation of this complaint as though fully set forth herein.

140. The above-described respective assault, battery, excessive force, false arrest, unlawful search, false imprisonment, detention and malicious prosecution of the plaintiff were without just or probable cause and without any warrant or properly issued warrant, legal process directing or authorizing the plaintiff's arrest, summary punishment, and subsequent detention.

141. As a result of the above-described assault, battery, excessive force, false arrest, unlawful search, false imprisonment, detention and prosecution, the plaintiff was caused to suffer loss of liberty, serious personal injuries, humiliation, great mental and physical anguish, embarrassment and scorn among those who know him; was prevented from attending to his necessary affairs, and has been otherwise damaged in his character and reputation.

142. Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to

be proven at trial against the defendant officers, individually and severally.

143. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

## AS AN EIGHTH CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

144. By this reference, plaintiffs incorporates each and every preceding allegation and averment set forth in this complaint as though fully set forth herein.

145. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

146. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, and ATF Special Agents with all the actual and/or apparent authority attendant thereto.

147. The defendant officers and ATF Agents acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

148. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they are engaged in illegal or criminal conduct;

b. manufacturing evidence against individuals allegedly involved in illegal or criminal conduct;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas); and

e. wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so.

149. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

150. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made

false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

151. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

152. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

153. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the

settlements of even substantial civil claims and police department action against officers.

154. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

155. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of New York, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

156. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a) The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b) The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c) The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

(d) The right to be free from the use of excessive force.

157. As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

158. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

159. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the

right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

160. The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

## AS A NINTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:
## ASSAULT AND BATTERY

161. Plaintiff repeats and re-alleges each preceding paragraph of the Complaint as if each paragraph is repeated verbatim herein.

162. At the time of the plaintiffs arrest by the defendant officers, the plaintiff did not challenge nor resist the defendants, nor engage in any threatening behavior towards the defendants.

163. However, as set forth above, the defendant officers assaulted the plaintiffs, battered the plaintiffs, and subjected the plaintiff to excessive force and summary punishment.

164. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers' acts as described above.

165. Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against the defendants, individually and severally.

166. This action, upon information and belief, falls within one or more of the exceptions of CPLR 1602.

**AS A TENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS: NEGLIGENCE**

167. Plaintiff repeats and re-alleges all preceding paragraphs of this complaint as if each paragraph is repeated verbatim herein.

168. As a direct and proximate result of the negligent acts and/or omissions of the defendants as set forth herein, the plaintiffs suffered physical injury, conscious pain and suffering, medical expenses, and mental anguish.

169. That by reason of the said negligence, the plaintiffs suffered and still suffers bodily injuries, became sick, sore, lame and disabled and has remained sick, sore, lame and disabled since the aforesaid incident; has suffered great pain, agony and mental anguish and is informed and verily believes that he will continue to suffer for a long time to come and that said injuries are permanent; has suffered economic loss inasmuch as he was forced to, and is still forced to expend sums of money on medical treatment; that he was deprived of his pursuits and interests and verily believes that in the future he will continue to be deprived of such pursuits; and that said injuries are permanent. The defendant officers were at all material times acting within the scope of their employment, and as such, the City defendant is vicariously liable for the defendant officers acts as described above.

170. This cause of action, upon information and belief, falls within one or more of the exceptions of CPLR 1602.

**AS AN ELEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS: UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT, BROUGHT PURSUANT TO 42 U.S.C. SECTION 1983/BIVENS**

171. By this reference, plaintiff incorporates each and every

allegation and averment set forth in the preceding paragraphs of this complaint as though fully set out herein.

172. By the unlawful invasion of plaintiff's home, and plaintiff's physical apprehension, arrest and detention on August 4, 2015, defendant NYPD officers, acting under color of state law, and defendant ATF agents acting as federal law officers, deprived the plaintiff of his right to be free from unreasonable search and seizure in violation of the fourth and fourteenth Amendments, therefore the NYPD defendants are liable pursuant to 42 U.S.C. Section 1983 and the ATF defendants are liable pursuant to Bivens (supra).

173. The defendants subjected the plaintiff to such deprivations, either in a malicious or reckless disregard of the plaintiff's rights or with deliberate indifference to those rights.

174. As a result of the aforesaid violation, plaintiff has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and has been otherwise damaged in his character and reputation.

175. Consequently, plaintiff has been damaged and demands compensatory and punitive damages in an amount to be proven at trial against each defendant, individually and severally.

## AS A TWELFTH CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

176. By this reference, plaintiffs incorporates each and every preceding allegation and averment set forth in this complaint as though fully set forth herein.

177. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

178. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, and ATF Special Agents with all the actual and/or apparent authority attendant thereto.

179. The defendant officers and ATF Agents acted under color of law, in their official capacity, and their acts were performed pursuant to the official policy of the City of New York to rely on unverified information from Un-identified Confidential Sources in the charge and prosecution of criminal defendants.

180. The aforementioned official policy of the City of New York was the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, that deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

  (a)  The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

  (b)  The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

  (c)  The right to be free from unreasonable detention and/or

continued detention without probable cause in that the plaintiff was detained.

(d)   The right to be free from the use of excessive force.

181. As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

182. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

183. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

**WHEREFORE**, plaintiff respectfully requests judgment against the Defendants as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;

2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

4. For such other and further relief as the court deems proper.


Dated: November 17, 2017,
       New York, New York

_____
Chukwuemeka Nwokoro, Esq.
Nwokoro & Scola, Esquires
Attorney for Plaintiff
44 Wall Street, Suite 1218
New York, New York 10005
Tel. (212) 785-1060