UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

WELLINGTON CLASE,

                           Plaintiff,                  **REPORT AND RECOMMENDATION**

     v.                                           17-cv-02247 (MKB) (ST)

THE UNITED STATES, et al,

                           Defendants.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      Wellington Clase ("Plaintiff") brings this action under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, the Federal Tort Claims Act ("FTCA"), *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and New York State law against the United States, the City of New York, Special Agent Thomas Kalogiros ("Kalogiros"), New York Police Department ("NYPD") Detectives John Barratt ("Barratt"), and Michael O'Brien ("O'Brien"), Undercover C0177 ("UCC0177"), Andrew Thorne, Detective Stephen Millwater, and John Does 1-15. Of the defendants named, Plaintiff served summons upon only the United States, the City of New York, Kalogiros, Barratt, and O'Brien. *See* Summons Returned Executed, Dkt. Nos. 13, 14, 18, 19, 20.

      Pending before this Court are Motions for Summary Judgment filed by the United States and Kalogiros (together, "Federal Defendants") and the City of New York, Barratt, and O'Brien (together, "City Defendants"). The Honorable Judge Margo K. Brodie referred these motions for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, this Court respectfully recommends that Federal and City Defendants' Motions for Summary Judgment be GRANTED.

## BACKGROUND

### I. Factual Background

Since December 2009, Plaintiff has been identified by the NYPD as a member of the Trinitarios gang. Fed. Defs.' 56.1 Statement of Material Facts Supp. Summ. J. ("Fed. 56.1") ¶ 1, Dkt. No. 68-3. Kalogiros has been a Bureau of Alcohol Tobacco and Firearms ("ATF") special agent for at least twelve years. *Id.* ¶ 6. From 2013 to 2015, Kalogiros was a special agent for the ATF Joint Firearms Taskforce ("JFTF"). *Id.* ¶ 8. Barratt and O'Brien are NYPD detectives. *See generally* City Defs.' 56.1 Statement of Material Facts Supp. Summ. J. ("City 56.1"), Dkt. No. 70.

In May 2013, Kalogiros received information from the NYPD Queens Gang Squad ("QGS") about members of the Trinitarios. Fed. 56.1 ¶ 10. QGS was working with a confidential informant ("CI") to conduct undercover purchases of firearms. *Id.* ¶ 11. CI was a member of the Trinitarios. *Id.* ¶ 11. QGS deemed CI a credible source. *Id.* ¶ 12. CI was familiar with Plaintiff and Plaintiff's appearance. *Id.* ¶ 14.

On May 9, 2013, QGS detectives, including Barratt, identified Plaintiff as an individual who illegally dealt firearms and had a firearm for sale. *Id.* ¶ 13. CI also identified Plaintiff as the individual with a firearm for sale. *Id.* ¶ 14. Kalogiros prepared a plan for UCC0177, an undercover NYPD detective and JFTF officer, to purchase the firearm from Plaintiff. *Id.* ¶¶ 17, 18.

On May 10, 2013, CI contacted Plaintiff at a cell phone number that only Plaintiff used and scheduled the purchase to take place at 74-07 64th Lane, Queens, New York. *Id.* ¶¶ 19-21. The transaction was to take place that day. *See Id.* ¶ 27. Around 2:00 p.m., CI notified JFTF agents that CI and Plaintiff changed the location of the transaction to the vicinity of 124th Street

2

and Jamaica Avenue in Queens. *Id.* ¶ 22. As part of the plan, Plaintiff and CI were to recognize one another at the scene of the transaction. *Id.* ¶ 24. Kalogiros provided UCC0177 with ATF electronic surveillance equipment and prerecorded ATF buy money. *Id.* ¶ 23. Around 3:30 p.m., UCC0177 drove an ATF vehicle equipped with fixed audio and video recording equipment to 124th Street and Jamaica Avenue. *Id.* ¶ 27. UCC0177 and CI met with an individual who sold UCC0177 a Ruger Model p85 9mm pistol and ammunition for $800. *Id.* ¶ 28. At the time, Kalogiros was parked several blocks away and did not see the transaction. *Id.* ¶¶ 29-30.

Immediately after the transaction, Kalogiros collected the firearm and surveillance evidence. *Id.* ¶ 31. At approximately 4:00 p.m. that day, Kalogiros met UCC0177 and CI at the 107th precinct. *Id.* ¶ 32. Kalogiros showed UCC0177 a photo array prepared by QGS, then showed an identical array to CI. *Id.* ¶ 32. From the arrays, both UCC0177 and CI identified Plaintiff as the individual who sold UCC0177 the firearm. *Id.* ¶ 34. Kalogiros gave weight to the identifications as they were made without hesitation, CI knew Plaintiff before the sale and was present at the sale, and UCC0177 was a trained NYPD detective who was present at the sale. *Id.* ¶¶ 35-37. Kalogiros determined that it was unnecessary to further investigate the identity of the firearm seller. *Id.* ¶ 38. Within one week of the transaction, Kalogiros provided QGS with his report, which is dated May 13, 2013, as well as all audio and video surveillance collected from the transaction. *Id.* ¶ 40. No immediate arrest was made and neither QGS nor the Queens County District Attorney's office asked Kalogiros to provide further evidence pertaining to Plaintiff. *Id.* ¶¶ 39, 41.

In 2015, QGS presented Plaintiff's firearm sale case and related evidence to the Queen's County District Attorney's office. *Id.* ¶ 45. In July 2015 a grand jury indicted Plaintiff. *Id.* ¶ 46. During the grand jury proceeding, Kalogiros testified to the custody of the firearm but not to

3

Plaintiff's identity. *Id.* ¶¶ 47-48. Also in July 2015, a warrant was issued for Plaintiff's arrest pursuant to the firearm sale. *Id.* ¶ 49. The warrant was signed by a justice of the New York State Supreme Court. *Id.*

Plaintiff was arrested on August 4, 2015. *Id.* ¶ 50. Kalogiros, Barratt, and O'Brien were not physically present at the arrest. *Id.* ¶ 59; City 56.1 ¶¶ 32-33. Barratt was Plaintiff's arresting officer. City 56.1 ¶ 31. That same day, Plaintiff was arraigned and incarcerated. Fed. 56.1 ¶¶ 63, 69. Plaintiff was held on $150,000 bail. *Id.* ¶ 70.

On September 16, 2015, Kalogiros submitted to the Queens County District Attorney's office an affidavit in which he attested that UCC0177 identified Plaintiff as the firearm seller. *Id.* ¶ 67.

On October 14, 2015, Plaintiff was provided with a defense attorney. *Id.* ¶ 65. The attorney was made aware of the existence of audio and video evidence. *Id.* ¶ 66. Plaintiff, too, was aware of this evidence. *Id.* ¶ 43.

Plaintiff's parents posted his bail and he was released from jail on January 29, 2016. *Id.* ¶¶ 69-70. On May 11, 2016, UCC0177 was unable to identify Plaintiff at an in-person lineup. *Id.* ¶ 71. On June 9, 2016, the New York State Supreme Court dismissed the charges against Plaintiff. *Id.* ¶ 72. A dismissal statement in the District Attorney file states, "The people, together with the ATF, . . . have concluded that [Plaintiff] is not the person depicted in the video of the crime charged." City 56.1 ¶ 49.

## II. Procedural History

Plaintiff commenced this action on April 13, 2017. *See generally* Compl., Dkt. No. 1. With permission from this Court, Plaintiff filed his Amended Complaint on November 18, 2017. Minute Entry dated October 19, 2017; *see generally* Am. Compl., Dkt. No. 30. Therein, Plaintiff

4

asserts the following causes of action against the Federal Defendants and the City Defendants under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, the FTCA, *Bivens*, and New York State Law: false arrest and false imprisonment; malicious prosecution; excessive force; unlawful search and seizure; failure to intervene; denial of a constitutional right to a fair trial; assault and battery; negligence; and municipal liability related to the foregoing. *See generally* Am. Compl.

The Federal Defendants and the City Defendants each filed a Motion for Summary Judgment, which this Court consolidated. Order dated September 29, 2020; *see* First Mot. Summ. J., Dkt. No. 68; Mem. Supp. Fed. Defs.' Mot. Summ. J. ("Fed. Mem."), Dkt. No. 68-2; Mot. Summ. J., Dkt. No. 69; City Defs.' Mem. Supp. Mot. Summ. J. ("City Mem."), Dkt. No. 71. In his memoranda in opposition to the summary judgment motions, Plaintiff withdraws all causes of action against Federal Defendants except for his claims of false arrest and false imprisonment, unlawful search and seizure, and denial of right to a fair trial. Mem. Opp. Fed. Defs.' Mot. Summ. J. ("Opp. Fed.") at 1, Dkt. No. 64. He concedes "that there is no allegation that the United States has waived sovereign immunity" with respect to constitutional tort claims against its federal employees. *Id.* at 3; *see* Fed. Mem. at 8. Further, "Plaintiff withdraws all claims against [City Defendants] except the claim for false arrest and false imprisonment." Mem. Opp. City Defs.' Mot. Summ. J. ("Opp. City") at 1, Dkt. No. 65. Among the claims withdrawn is Plaintiff's claim for municipal liability against the City of New York, described in Plaintiff's Opposition as a claim pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Opp. City at 1, 6. The consolidated summary judgment motions have been fully briefed.

5

**LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996). Nonetheless, a "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

Per Local Civil Rule 56.1, any party that files a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure must "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of material facts as to which the moving party contends there is no genuine issue to be tried." S. & E.D.N.Y. Civ. R. 56.1(a).

Further, Local Rule 56.1 also requires that the "papers opposing a motion for summary judgment . . . include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party . . . ." *Id.* at 56.1(b). Each material fact set forth by the moving party in its statement "will be deemed to be admitted for purposes of the motion unless specifically controverted" in the opposing party's statement. *Id.* at 56.1(c).

## DISCUSSION

As a preliminary matter, this Court notes that Plaintiff has not filed statements pursuant to Rule 56.1 to dispute the facts that Federal and City Defendants aver in their respective Rule 56.1 statements. Where an opposing party "fails to controvert a fact set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted" so long as the fact is supported in the record. *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003); *see also Wallen v. Teknavo Grp.*, 19-CV-6196 (MKB) (SJB), 2019 WL 1435879, at *2, n. 5 (court "deems admitted Defendant's statements to which Plaintiff has failed to properly object or otherwise provide admissible evidence" (citing *Kelly v. City of N.Y.*, 576 F. App'x 22, 24, n. 2 (2d Cir. 2014))). Accordingly, while assessing the Federal and City Defendants' Motions for Summary Judgment as they relate to the remaining claims, this Court will deem admitted all supported facts from the Federal and City Defendants' Rule 56.1 statements.

### I. Claims Against Federal Defendants

#### a. *Bivens* Claims

Plaintiff brings each of his remaining claims against Kalogiros under *Bivens*. *See generally*, Am. Compl. In *Bivens*, the Supreme Court implied a cause of action for an unreasonable search and seizure in violation of the Fourth Amendment against a federal agent who effected a search and arrest without a warrant. *Bivens*, 403 U.S. at 389, 397. Since *Bivens*,

7

the Supreme Court has recognized implied causes of action against federal personnel in two additional contexts: gender discrimination in violation of the Fifth Amendment's Due Process Clause and the failure to provide adequate medical treatment in violation of the Eight Amendment's Cruel and Unusual Punishment Clause. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017). More recently, however, the Supreme Court "has made clear that expanding the *Bivens* remedy is . . . a 'disfavored' judicial activity." *Id.* at 1857 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Accordingly, courts must exercise "caution before extending *Bivens* remedies" beyond the three recognized contexts above. *Id.* (internal quotation marks and citation omitted).

Thus, a court assessing *Bivens* claims should first determine whether the plaintiff's claims present a "new *Bivens* context." *Id.* at 1859-60. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new. *Id.* at 1859. If the context is new, a court then asks whether "any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Even where no alternative process exists, "a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. 1843 at 1857 (internal quotation marks omitted) (citing *Carlson v. Green*, 446 U.S. 14 (1980)).

Plaintiff concedes that his *Bivens* claims all arise in new contexts. Opp. Fed. at 8. In a conclusory manner, Plaintiff pleads that he "has no other remedies against [Federal Defendants]." *Id.* Ultimately, as the below discussion indicates, *see infra* Sections I.b., I.c., I.d., the outcome of this matter would not be affected were the Court able to apply a *Bivens* remedy. Without deciding whether Plaintiff's claims emerge in new contexts, alternative remedies bar

8

implied rights of action, or special factors counsel hesitation, the Court will assume, *arguendo*, that Plaintiff's claims against Federal Defendants may proceed under *Bivens*. *See Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (acknowledging *Zigler* framework, then advising, "disposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy[,] . . . is appropriate in many cases. This Court has taken that approach on occasion").

### b. False Arrest and False Imprisonment

Plaintiff raises false arrest and false imprisonment claims against Federal Defendants under *Bivens* and the FTCA. *See* Am. Compl. ¶¶ 86-92. Courts in New York analyze these claims under New York law. *See Rhodes v. U.S.*, 519 F. App'x 703, 705 (2d Cir. 2013) (applying New York law to false arrest and imprisonment claims arising under FTCA); *Nelson v. Hernandez*, 524 F. Supp.2d 212, 220-24 (E.D.N.Y. 2007) (applying New York law to false arrest claim arising under *Bivens*). New York law treats "false arrest [as] a species of false imprisonment" and assesses each claim using the same elements. *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996). A plaintiff alleging false arrest must show: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citation omitted). An officer "can only be liable for a false arrest that occurs outside of his presence if he had reason to know that such a false arrest was likely to occur." *Escalera v. Lunn*, 361 F.3d 737, 748 n. 4 (2d Cir. 2004) (internal quotation marks and citation omitted).

The "existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (internal quotation marks and

9

citation omitted). Probable cause exists when "the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."[1] *Id*. For example, where a "plaintiff was arrested pursuant to a warrant issued by a neutral magistrate . . . [courts] presume that probable cause existed." *Rhodes*, 519 F. App'x at 705 (citing *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007)). Probable cause to arrest also exists where officers receive "information from some person, normally the putative victim or eyewitness." *Wieder v. City of N.Y.*, 569 F. App'x. 28, 30 (2d Cir. 2014) (citing *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)); *see also Celestin v. City of N.Y.*, 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008) (stating, a "positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest"). Officers may reasonably rely on identifications by law enforcement officials, even if those identifications "later turn out to be mistaken." *Hewitt v. City of N.Y.*, No. 09 CV 214 (RJD) (MDG), 2012 WL 4503277, at *4 (E.D.N.Y. Sept. 28, 2012), *affirmed* 544 F. App'x 24 (2d Cir. 2013). A "mistaken identity can provide the basis for probable cause . . . if the police have probable cause to arrest the person sought and the arresting officer reasonably believed that the arrestee was that person." *Martinez v. City of N.Y.*, 340 F. App'x 700, 701 (2d Cir. 2009) (citing *Hill v. Cal.*, 401 U.S. 797, 802-03). "Once a police officer has a reasonable basis for believing that there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v.*

---

[1] However, contrary to Federal Defendants' belief, *see* Fed. Mem. at 10; Reply Mem. Supp. Fed. Defs.' Mot. Summ. J. at 5, Dkt. No. 68-6, "the presumption of probable cause arising from an indictment applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions." *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted).

*N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). The burden of establishing the absence of probable cause rests on the plaintiff. *Nelson*, 524 F. Supp.2d at 220.

Federal Defendants assert that probable cause bars Plaintiff's false arrest and false imprisonment claims. Fed. Mem. at 10. Without providing evidence to substantiate his argument, Plaintiff claims that CI and UCC0177 knew that the firearm seller was not Plaintiff and that, therefore, Kalogiros also knew that the firearm seller was not Plaintiff. Opp. Fed. at 4. Thus, Plaintiff proceeds, the presumption of probable cause is rebuttable and probable cause does not here exist. *Id.* at 4-5.

The undisputed facts support finding that law enforcement had probable cause to arrest Plaintiff. Plaintiff's arrest was initiated through an arrest warrant issued by a justice of the New York State Supreme Court, establishing probable cause. Fed. 56.1 ¶¶ 49, 64; Silverman Decl. ¶ 8; Silverman Decl., Ex. D; *see Rhodes*, 519 F. App'x at 705 (explaining courts assume probable cause where arrest made pursuant to warrant issued by neutral magistrate). Further, the arrest was made in reliance on CI and UCC0177's confident identifications of Plaintiff as the firearm seller based upon their observations during the transaction. Fed. 56.1 ¶¶ 34-37; Kalogiros Decl. ¶¶ 14-15; *see Dash v. Montas*, 17-CV-515 (PKC) (RER), 2020 WL 1550708, *7-8 (E.D.N.Y. Mar. 31, 2020) (finding probable cause to arrest where one eyewitness and a second witness who viewed recording of crime each identified plaintiff as perpetrator from photo array); *Williams v. City of N.Y.*, No. 10-CV-2676 (JG) (LB), 2012 WL 511533, at *5 (E.D.N.Y. Feb. 15, 2012) ("an eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitnesses under the circumstances"). The facts indicate that UCC0177 was an experienced NYPD detective and CI was familiar with Plaintiff and had contact with Plaintiff in arranging the transaction. Fed. 56.1

11

¶¶ 14, 24-26, 34-37; Kalogiros Decl. ¶¶ 5-7, 9, 14-16; Kalogiros Decl., Ex. C. Contrary to Plaintiff's assertion, regardless of whether UCC0177 and CI knew Plaintiff was not the firearm seller, there is no evidence to impute this supposed knowledge to Kalogiros.[2]

As there is no dispute concerning the facts that give rise to a finding of probable cause, this Court respectfully recommends Federal Defendants' Motion for Summary Judgment be granted as to Plaintiff's false arrest and false imprisonment claims.[3]

### c. Unlawful Search and Seizure

Under the Fourth Amendment and *Bivens*, Plaintiff claims that Federal Defendants subjected Plaintiff to unlawful search and seizure when they arrested him and held him on bail. Opp. Fed. at 5-6; *see* Am. Compl. ¶¶ 116-20, 171-75.

### i. Unlawful Search

Federal Defendants state that the "Amended Complaint does not put forward any facts, nor is there any evidence, that federal agents participated in a physical search of Plaintiff's person." Fed. Mem. at 16, n. 6. Plaintiff neither acknowledges nor contests this assertion in his Opposition. *See* Opp. Fed. at 5-6. "[I]n *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006). Although Plaintiff broadly alleges his unlawful search claims against all

---

[2] Plaintiff cites *Dufort v. City of New York*, 874 F.3d 338, 352 (2d Cir. 2017), to support his argument that a presumption of probable cause based on a warrant is rebuttable if the warrant was issued as a result of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Opp. Fed. at 4. The relevant portion of *Dufort*, however, identifies as rebuttable the presumption of probable cause based on an indictment in a malicious prosecution claim, not probable cause based on a warrant in a false arrest claim. *See Dufort*, 874 F.3d at 352. As discussed, *see infra* Note 1, grand jury indictments do not give rise to probable cause in false arrest actions. Nonetheless, even if the authority was applicable to Plaintiff's false arrest claim, Plaintiff fails to offer any evidence that Federal Defendants acted in bad faith.

[3] As probable cause is a complete defense to an action for false arrest, it is unnecessary to address Kalogiros' qualified immunity defense. *Weyant*, 101 F.3d at 852.

12

officers involved in the August 4, 2015 arrest, he does not dispute evidence offered by Federal Defendants to suggest that no federal personnel were present at the arrest. *See* Am. Compl. ¶¶ 116-20, 171-75; Kalogiros Decl. ¶ 23 ("I was not present at [Plaintiff's] arrest, nor were any other ATF agents. Further, I have conducted a diligent search . . . and have located no record of ATF personnel participating in Plaintiff's . . . arrest."). Generalized statements that "do not identify who did what" do not amount to the required showing of personal involvement. *Rosado v. Vill. Of Goshen*, 7:16-CV-6916 (NSR), 2019 WL 1437522, at *7 (S.D.N.Y. Mar 31, 2019). Accordingly, this Court recommends granting summary judgment for Federal Defendants on Plaintiff's unlawful search claim.

### ii. Unlawful Seizure

The Second Circuit has found that prolonged detention may violate an individual's Fourth Amendment right to be free from unreasonable seizures. *Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007). To succeed on a prolonged detention claim, a plaintiff must show: "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Id.* at 205 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). When assessing whether detention violated a plaintiff's Fourth Amendment rights, courts consider: (1) the length of time the plaintiff was incarcerated, (2) the ease with which the exculpatory evidence in the defendant officers' possession could have been checked, and (3) the alleged intentionality of defendants' behavior. *Harewood v. Braithwaite*, 64 F. Supp.3d 384, 401 (E.D.N.Y. 2014) (citing *Russo*, 479 F.3d at 209-10).

13

Federal Defendants aver Plaintiff's arrest was reasonable because it was pursuant to a warrant. Fed. Mem. at 16. Further, they claim Plaintiff can establish neither the ease with which exculpating evidence could have been checked nor Kalogiros' intent. *Id.* at 17. On the contrary, Plaintiff argues that Federal Defendants could have easily checked the exculpating evidence by "look[ing] at the video which was in their possession," and that Federal Defendants' behavior was intentional because "it is reasonable to conclude that [Federal Defendants] knew that it was not [Plaintiff] who [sold] the illegal firearm, yet they charged him anyway." Opp. Fed. at 6.

Plaintiff's arrest was initiated through a warrant and was therefore not itself an unreasonable seizure. Fed. 56.1 ¶¶ 49, 64; Silverman Decl. ¶ 8; Silverman Decl., Ex. D; *Salvador v. City of N.Y.*, 15 cv 5164 (DLC), 2016 WL 2939166, at *4 (S.D.N.Y. May 19, 2016) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." (citing *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012))). However, this Court will assess whether Federal Defendants mishandled or suppressed exculpatory evidence and thus violated Plaintiff's Fourth Amendment rights by prolonging his detention after reasonable arrest.

Here, as in *Russo*, the exculpatory evidence at issue is a video recording that was in Federal Defendants' possession. Fed. 56.1 ¶ 31; Kalogiros Decl. ¶ 13; Kalogiros Decl., Ex. C; *Russo*, 479 F.3d at 200. The present case differs from *Russo*, though, in that there is no evidence to suggest that Kalogiros intentionally suppressed the exculpatory evidence. In *Russo*, a defendant officer locked the exculpatory evidence in his desk and did not release the tape to the prosecutor until 68 days after the plaintiff had been detained. *Russo*, 479 F.3d at 201, 209. Additionally, the defendants in *Russo* were aware of the plaintiff's claim of innocence and still

14

did not review the recording. *Id.* at 209. In the present matter, Kalogiros submitted to QGS his report and all audio and video surveillance from the firearm sale within one week of the transaction, more than two years before Plaintiff's arrest. Fed. 56.1 ¶ 40; Kalogiros Decl. ¶ 19. The record shows that Plaintiff and his attorney were aware of the video evidence from the start of the criminal proceedings. Fed. 56.1 ¶¶ 43, 66; Silverman Decl. ¶¶ 11, 15; Silverman Decl., Ex. G, 82; Silverman Decl., Ex. M. Further, there is no evidence to suggest that Kalogiros was aware that Plaintiff claimed he was innocent while in detention. *See* Fed. 56.1 ¶ 41; Kalogiros Decl. ¶ 19 ("I did not receive any further requests for evidence pertaining to [Plaintiff] from QGS or the Queens District Attorney's Office . . . ."). Nothing in the record demonstrates that Kalogiros intentionally mishandled or suppressed exculpatory evidence or otherwise behaved in a manner that shocks the conscience. Plaintiff neither disputes the evidence offered by Federal Defendants nor introduces his own evidence to contradict it.

Because there is no dispute of material fact as to Plaintiff's inability to prove Kalogiros behaved intentionally, this Court respectfully recommends Federal Defendants' Motion for Summary Judgment be granted on Plaintiff's unlawful seizure claim.

### d. Denial of Right to a Fair Trial

Plaintiff alleges under *Bivens* that Kalogiros denied Plaintiff his constitutional right to a fair trial by fabricating or falsifying evidence. *See* Am. Compl. ¶¶ 124-138. A plaintiff "suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Shapiro v. Goldman*, 14 Civ. 10119 (NRB), 2016 WL 4371741, at *20 (S.D.N.Y. Aug. 15, 2016) (citing *Jovanovic v. City of N.Y.*, 486 F. App'x 149, 152 (2d Cir. 2012)).

15

Federal Defendants assert that "Plaintiff fails to offer any evidence that [Kalogiros] fabricated evidence." Fed. Mem. at 19. In response, Plaintiff claims Kalogiros "file[d] an affidavit falsely stating that [P]laintiff was the purchaser of an illegal firearm when he knew or had reason to know that this was false . . . ." Opp. Fed. at 7. The record supports Federal Defendants' argument.

The undisputed evidence demonstrates that Kalogiros did not witness the firearm sale on May 10, 2013. Fed. 56.1 ¶¶ 29-30; Kalogiros Decl. ¶ 12. Rather, he met with CI and UCC0177 after the transaction and the two identified Plaintiff as the individual who sold UCC0177 the pistol. Fed. 56.1 ¶ 34; Kalogiros Decl. ¶ 14. Kalogiros determined the identifications were credible because CI was familiar with Plaintiff before the firearm sale and was present at the transaction, and UCC0177 was a trained detective who had an opportunity to observe Plaintiff during the transaction. Fed. 56.1 ¶¶ 36-37; Kalogiros Decl. ¶ 15. Kalogiros then submitted to QGS his report and all audio and video surveillance from the sale. Fed. 56.1 ¶ 40; Kalogiros Decl. ¶ 19. At a grand jury proceeding on July 15, 2015, Kalogiros testified as to the custody of the pistol but did not identify Plaintiff. Fed. 51.6 ¶¶ 47-48; Kalogiros Decl. ¶ 21. At the request of the Queens County District Attorney, Kalogiros signed an affidavit in September 2015. Kalogiros Decl. ¶ 24. In it, Kalogiros states, "a photograph of [Plaintiff] . . . was identified to me by [UCC0177] as the person who sold [UCC0177] the firearm." Kalogiros Decl., Ex. D.

None of the foregoing suggests that Kalogiros created fake evidence. Plaintiff offers no evidence to contradict Federal Defendants' claims or to otherwise show that Kalogiros fabricated evidence. Accordingly, there does not exist a dispute of material fact. This Court therefore respectfully recommends that summary judgment be granted in favor of Federal Defendants as to Plaintiff's claim for denial of his right to a fair trial. *See Dash v. Montas*, 17-CV-515 (PKC)

16

(RER), 2020 WL 1550708, at *11-12 (E.D.N.Y. Mar 31, 2020) (granting summary judgment in favor of defendants on plaintiff's fair trial claim, where plaintiff failed to raise genuine dispute of material fact as to whether defendants falsified evidence as part of plaintiff's prosecution); *Reen v. City of N.Y.*, 16-CV-3347 (MKB), 2018 WL 4608194, at *11 (E.D.N.Y. Sept. 25, 2018) (dismissing fabrication of evidence claim at summary judgment stage, where facts did not support inference that defendant knowingly fabricated evidence against plaintiff).

## II. Claim Against City Defendants

### a. False Arrest and False Imprisonment

Plaintiff's false arrest and false imprisonment claims against City Defendants arise under 43 U.S.C. § 1983 and Article 1, Section 12 of the New York State Constitution. Am. Compl. ¶¶ 86-92, 139-43. "A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law," and courts evaluate them using the same elements. *Weyant*, 101 F.3d at 852. Thus, this Court will apply the standards of New York law from Plaintiff's false arrest claim against Federal Defendants to its analysis of Plaintiff's false arrest claim against City Defendants.

City Defendants argue that there was probable cause for arrest because Barratt and O'Brien reasonably relied on CI and UCC0177's identifications of Plaintiff as the gun seller. City Mem. at 8. Plaintiff does not formally dispute the reasonableness of Barratt and O'Brien's reliance on CI and UCC0177's identifications. Rather, Plaintiff claims in his opposition that "it is highly improbable that CI and [UCC0177] could not tell that the individual who they met with . . . was not" Plaintiff. Opp. City at 3.

The record supports City Defendants' argument. CI was a known Trinitarios member who had been working with the NYPD to conduct undercover firearm purchases from gang

17

members and was considered reliable. City 56.1 ¶¶ 3-4; Kalogiros Decl. ¶¶ 4-5. Additionally, CI was familiar with Plaintiff, had identified Plaintiff by name, and spoke with Plaintiff by phone to arrange the transaction. City 56.1 ¶¶ 5-6, 13; Kalogiros Decl. ¶ 5, 7, 16-17; Rosenkilde Decl., Ex. A. UCC0177 was an experienced NYPD detective. City 56.1 ¶ 14; Kalogiros Decl. ¶ 6. Both CI and UCC0177 attended the firearm sale and, shortly thereafter, identified Plaintiff as the firearm seller. City 56.1 ¶¶ 15, 20-21; Kalogiros Decl. 10-11, 14; Rosenkilde Decl., Ex. A. As discussed above, in the analysis of Plaintiff's claim of false arrest and false imprisonment against Federal Defendants, these facts establish the identifications as reasonably trustworthy information that provide a basis for probable cause to arrest.[4] Once more, Plaintiff offers no evidence to contradict the foregoing.

Based on the above, there is no genuine dispute of material fact with regard to Plaintiff's claim of false arrest and false imprisonment against City Defendants. This Court therefore recommends that City Defendants' motion for summary judgment on this claim be granted.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Federal and City Defendants' Motions for Summary Judgment be GRANTED.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States

---

[4] Again, because probable cause is a complete defense to an action for false arrest, it is unnecessary to address Barratt and O'Brien's qualified immunity defense. *Weyant*, 101 F.3d at 852.

18

Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                          /s/
                 Steven L. Tiscione
                 United States Magistrate Judge
                 Eastern District of New York

Dated: Central Islip, New York
       November 2, 2020